No. 24-7089

# United States Court of Appeals for the District of Columbia Circuit

NATIONAL RAILROAD PASSENGER CORPORATION, (AMTRAK),

*Plaintiff-Appellee,*

v.

SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST MADE AS OF JANUARY 25, 2007, WITH SAID PROPERTY INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION; UNION STATION SOLE MEMBER, LLC; UNKNOWN OWNERS,

*Defendants-Appellees.*

UNION STATION INVESTCO, LLC; KOOKMIN BANK CO., LTD., INDIVIDUALLY AND IN ITS CAPACITY AS TRUSTEE OF KTB CRE DEBT FUND NO. 8, A KOREAN INVESTMENT TRUST,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Columbia
Docket No. 1:22-cv-010143 (APM)

**REPLY IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL**

| | |
|---|---|
| Steven J. Willner | Melissa Arbus Sherry |
| NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER | Christine C. Smith |
| | LATHAM & WATKINS LLP |
| One South Street | 555 Eleventh Street, NW |
| 27th Floor | Suite 1000 |
| Baltimore, MD 21202-3282 | Washington, DC 20004 |
| (410) 332-8542 | (202) 637-2200 |
| sjw@nqgrg.com | melissa.sherry@lw.com |

*Counsel for Appellant
Union Station Investco, LLC*

*Counsel for Appellant
Kookmin Bank Co., Ltd.,
Individually and in its capacity as
Trustee of KTB CRE Debt Fund
No. 8, a Korean Investment Trust*

*(additional counsel on inside cover)*

Paul Kiernan
HOLLAND & KNIGHT LLP
800 17th Street, NW
Suite 1100
Washington, DC 20006
(202) 663-7276

Y. David Scharf
Amber R. Will
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
(212) 735-8604

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

    A.    This Court Has Jurisdiction................................................................2

    B.    Leaseholders Are Likely To Succeed On The Merits.........................5

    C.    Leaseholders Will Suffer Irreparable Harm Absent A Stay .............10

    D.    The Balance Of The Equities And Public Interest Favor A Stay .......11

CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Catlin v. United States*,
   324 U.S. 229 (1945)............................................................................................3, 4

*Cobell v. Kempthorne*,
   455 F.3d 317 (D.C. Cir. 2006)...................................................................................3

*Loper Bright Enterprises v. Raimondo*,
   2024 WL 3208360 (U.S. June 28, 2024)...................................................................5

*Make the Road New York v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020).................................................................................2

*McCulloch v. Maryland*,
   17 U.S. (4 Wheat.) 316 (1819) ................................................................................6

*National Railroad Passenger Corp. v. Boston & Maine Corp.*,
   503 U.S. 407 (1992)..................................................................................................5

*National Railroad Passenger Corp. v. Two Parcels of Land*,
   822 F.2d 1261 (2d Cir. 1987) ................................................................................6, 7

*National Railroad Passenger Corp. (Amtrak) v. 3.44 Acres*,
   266 F. Supp. 3d 63 (D.D.C. 2017)............................................................................7

*Saxon v. Southwest Airlines Co.*,
   993 F.3d 492 (7th. Cir. 2021) ...................................................................................5

*United States v. 687.30 Acres*,
   451 F.2d 667 (8th Cir. 1971) ....................................................................................4

*United States v. Muñiz*,
   540 F.3d 310 (5th Cir. 2008) ....................................................................................4

*WMATA v. One Parcel of Land*,
   514 F.2d 1350 (D.C. Cir. 1975)............................................................................2, 4

|  | Page(s) |
|---|---|

**STATUTES**

28 U.S.C. §1292(a)(1) .................................................................................. 2, 4

Pub. L. No. 97-125, 95 Stat. 1667 (1981) ......................................................... 6

**OTHER AUTHORITIES**

D.C. Cir. R. 27(e) ............................................................................................ 1

H.R. Rep. No. 93-415 (1973) ........................................................................... 6

# INTRODUCTION

With the July 15 transfer date approaching, Leaseholders requested a stay from this Court on the last day possible. D.C. Cir. R. 27(e) (motion must be filed "at least 7 days before" action needed). Last night, the district court extended the transfer date to July 29 and indicated an intent to decide the pending stay motion. Dkt.122 (Am.Ex.20).

Amtrak's opposition makes one thing clear: there is no reason to rush to judgment on this motion—or this appeal. Amtrak assures the Court it will not (and so presumably need not) exercise most of the rights that flow from immediate possession. If the status quo that has persisted for decades is (largely) fine, there is no reason to expedite consideration of the many novel, important, and meritorious issues presented. There is no reason to give Amtrak control over all of the iconic Union Station so it can do a few "basic" things like improve "signage" and expand its "passenger waiting areas," Opp.2, 22, especially when ownership of the Interest is not needed to accomplish those ends, Rebibo Decl. ¶¶24, 29 (Mot.Ex.7). And there is no reason to risk the severe, irreparable harm a transfer would inflict—on the Leaseholders, the public, and the Station. This Court should grant a stay.

# ARGUMENT

## A. This Court Has Jurisdiction

This Court has jurisdiction under 28 U.S.C. §1291, *see WMATA v. One Parcel of Land*, 514 F.2d 1350, 1351 (D.C. Cir. 1975) (per curiam), or 28 U.S.C. §1292(a)(1)—or, at least, Leaseholders are likely to succeed in establishing the same. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020).

1. Amtrak distinguishes *WMATA* as involving a temporary taking, which could not be remedied once it occurred. Opp.12-13. That is not a cognizable distinction for at least two reasons.

First, the same is true here. Absent a stay, Amtrak will temporarily take control of the Interest, with the ability—and the directive—to renegotiate it. Hearing JX3 at 20, 23 (Mot.Ex.5) (FRA conditioning funding on Amtrak renegotiating lease within six months). Once Amtrak does that, Leaseholders cannot simply get the original Interest back. Amtrak argues the FRA's six-month timeline does not start until "'Amtrak's *successful acquisition*,'" which Amtrak asserts means "six months after *final judgment* at the earliest." Opp.15. But Amtrak does not explain why title plus possession is not a "successful acquisition." Amtrak also represents that "it will not significantly modify the Sublease or terminate it," Opp.29; *see* Opp.15, but jurisdiction cannot turn on Amtrak's non-binding representation—especially when qualified with a word like "significantly." And while Amtrak criticizes Leaseholders

for not requesting such commitments in the order, the court had already accepted Amtrak's arguments for why immediate possession was needed. Leaseholders cannot be faulted for not predicting that Amtrak would so quickly surrender the possession rights it fought so hard to get.

Second, the key holding of *WMATA* is that review of a possession order is sometimes needed before just compensation is decided—when the harm is imminent and cannot meaningfully be remedied after-the-fact. *Catlin*'s observations about the "ordinar[y]" case do not apply in those circumstances. *Catlin v. United States*, 324 U.S. 229, 233-34 (1945).

2. For similar reasons, appellate review is alternatively available under §1292(a)(1). "To qualify as an injunction, . . . an order must (1) be 'directed to a party'; (2) be 'enforceable by contempt'; (3) be 'designed to accord or protect' substantive relief; and (4) threaten 'a serious, perhaps irreparable, consequence and be challengeable only by immediate appeal.'" *Cobell v. Kempthorne*, 455 F.3d 317, 322 (D.C. Cir. 2006). The court's order qualifies because it directs Leaseholders to transfer possession on July 15 (now July 29), on pain of contempt. The order also grants Amtrak the substantive relief it seeks (possession) and will cause Leaseholders serious (indeed, irreparable) harm.

Amtrak contends the order cannot be appealable because there is no final judgment until "the determination of just compensation," Opp.16-17, but §1292(a)(1) specifically allows for the appeal of "[i]nterlocutory orders."

Amtrak further argues the order cannot be appealable because then "'any possession order would vest this court with immediate appellate jurisdiction.'" Opp.17. But possession orders do not always threaten irreparable harm because the property will not be destroyed during the appeal. *E.g.*, *United States v. 687.30 Acres*, 451 F.2d 667, 669 (8th Cir. 1971) (per curiam) ("likelihood of the Tribe sustaining irreparable injury" from taking "is at best only slight"). And *Catlin* expressly reserved the question of whether an appeal following a determination of just compensation is adequate when "damage has been done to the premises" by the unauthorized taking. 324 U.S. at 243.

This appeal comes to the Court in an unprecedented posture: Amtrak has never been awarded immediate possession when possession was challenged. Op.29 (Mot.Ex.2). Recognizing that a later appeal is not adequate in these circumstances is entirely consistent with *Catlin*.[1]

---

[1] Amtrak's reliance on *United States v. Muñiz*, 540 F.3d 310 (5th Cir. 2008), is misplaced. Its §1291 holding is inconsistent with *WMATA*. *Compare* 540 F.3d at 312 (no right to appeal order allowing government to "make borings"), *with* *WMATA*, 514 F.2d at 1351-52 (right to appeal order allowing government to "mak[e]" "borings").

**B. Leaseholders Are Likely To Succeed On The Merits**

1. Amtrak argues that "necessary for intercity rail passenger transportation" does not really mean "necessary." Opp.19-21. But none of the three cases Amtrak cites provides support for a "significant relationship" test—and none involve Union Station, a property Congress has singled out for special treatment.[2]

In *National Railroad Passenger Corp. v. Boston & Maine Corp.*, the Supreme Court interpreted a statute allowing Amtrak to condemn property "'required for intercity rail passenger service,'" upon approval of the Interstate Commerce Commission (ICC). 503 U.S. 407, 410-11 (1992). ICC had interpreted "'required'" to mean "'useful or appropriate.'" *Id.* at 417-18. This Court disagreed, holding that the plain meaning of "required" was "necessary, in the sense of indispensable." *Id.* at 417. The Supreme Court reversed—but on *Chevron* step-two grounds, deferring to ICC's "reasonable" interpretation of an ambiguous statute. *Id.* at 417-19. Amtrak has no comparable claim to *Chevron* deference, which the Supreme Court recently eliminated anyway. *Loper Bright Enters. v. Raimondo*, 2024 WL 3208360, at *22

---

[2] The district court planned to hold additional proceedings (with additional discovery) on the issue of "authority," which would include the statutory necessity standard—as distinct from Amtrak's need for immediate possession. Dkt.94 at 5-6, 13-14 (Am.Ex.3). In that procedural posture, there was no briefing on the statutory standard and Leaseholders cited a DDC decision for the "significant relationship" test. Dkt.99 ¶85 (Mot.Ex.4). That decision is not binding, and there are compelling reasons to decide this pure question of statutory interpretation. *See Saxon v. Southwest Airlines Co.*, 993 F.3d 492, 496 (7th. Cir. 2021).

(U.S. June 28, 2024). If anything, this Court's analysis in *Boston & Maine* supports *Leaseholders*: if the plain meaning of "required" is "necessary, in the sense of indispensable," even when an agency is deciding, then "necessary" must mean "indispensable" when Amtrak alone decides.

*National Railroad Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261 (2d Cir. 1987), is even less helpful. Both parties *agreed* the property was necessary for transportation (i.e., to build a road); the landowner disputed only whether Amtrak could give that property to the city to build that road. *Id.* at 1265.

Which leaves a Founding-era precedent on the Necessary & Proper Clause. Opp.20 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)). But *McCulloch* shows only that the meaning of "necessary" is context-dependent. And context makes clear Congress intended "necessary" to substantially limit Amtrak's eminent-domain authority. All agree: Amtrak is not the government. *Id.* In enacting the relevant statute, Congress admonished that Amtrak should use its eminent-domain power "as a last resort method, and only when absolutely necessary to fulfill its needs to provide intercity passenger service." H.R. Rep. No. 93-415, at 8 (1973). And in the Union Station Redevelopment Act (USRA), Congress expressed its specific intent for Union Station: that it be developed with "maximum reliance on the private sector and minimum requirement for Federal assistance." Pub. L. No.

6

97-125, §2, 95 Stat. 1667, 1667 (1981). It is inconceivable that Congress intended to leave Amtrak with veto authority to decide what is "necessary" for Union Station.

2. The district court also misapplied the "significant relationship" standard. Other courts have held that "mere 'usefulness'" is not sufficient to show a "'significant relationship,'" and that Amtrak's "determination[] of necessity" is not entitled to "abuse of discretion" review. *Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres*, 266 F. Supp. 3d 63, 67-69 (D.D.C. 2017); *see Two Parcels*, 822 F.2d at 1264-65. The court did not adhere to either limit: it concluded that Amtrak need not show the Interest was "superior to alternative means of achieving the same ends" and deferred to Amtrak's "business judgment" under an "abuse of discretion" standard. Op.41. Amtrak has no response.

Amtrak instead asks this Court to do the same: "Trust us." Amtrak's limited efforts to explain its need for the Interest amount to generalized platitudes that merely parrot the statute's language. *E.g.*, Opp.21 ("Amtrak desired 'to expand and improve its delivery of rail passenger services . . . .'"). When it comes to specifics, Amtrak says very little. Amtrak makes no effort to rehabilitate its initial purported emergent need: the already long-delayed Subbasement and Concourse Modernization Projects. Mot.14-15. Amtrak instead points to a desire to make "basic" improvements like improving "signage" and adding "passenger waiting areas." Opp.2, 22. For the "longer term," Amtrak points to things like "'passenger

7

seating areas'" and "'first-class lounges.'" Opp.22. But the court never found that possession of the Interest was necessary to accomplish any of those ends; it disclaimed any obligation to engage in that inquiry. Op.41. And the record is clear that Amtrak had untapped sublease rights to expand its footprint. Rebibo Decl. ¶24.

Amtrak also fails to rehabilitate its shifting narratives as to why it needs immediate possession. Amtrak does not dispute that its decade-long capital-improvement projects failed to establish an imminent need. Amtrak does not dispute that it produced a new schematic on the eve of the evidentiary hearing that described a complete overhaul of the Station to remove many commercial spaces, was not subject to any discovery, was never shown to its Board, and does not have the necessary approvals. Opp.23; Rebibo Decl. ¶¶8, 23. Nor does Amtrak dispute that its CEO later disclaimed this schematic, telling Congress that Amtrak intends to "enhance and maintain the retail." Amtrak Hr'g, at 1:08:26-1:10:20, https://transportation.house.gov/calendar/eventsingle.aspx?EventID=407522. Amtrak minimizes the design plan as merely "'preliminary'" (Opp.23), but even if true, that is precisely the problem. The district court should have required more before handing Amtrak the keys to the entire Station and office building.

3. The district court also improperly equated Amtrak with the federal government and granted possession on a limited record that established neither necessity nor Amtrak's ability to pay. Amtrak argues it is legally bound to pay full

8

compensation, Opp.24-25, but Amtrak is authorized to spend only $550 million, Mot.17-18; *see* Dkt.35 at 41 ¶12(q) ("[T]he Declaration of Taking here does not even confirm Amtrak's authority or ability to pay an award of just compensation.").

Amtrak further contends that Leaseholders accepted the district court's limits on discovery. Opp.25-26. That's not right. The court informed the parties it would decide immediate possession "preliminary to the more robust discovery that I think everybody agrees needs to be conducted in connection with the ultimate question of authority." Dkt.94 at 13:7-13. The court then invited Leaseholders to propose what "limited discovery" should look like, "recognizing [the court was] not going to grant [Leaseholders] the full-blown discovery [they] otherwise [were] seeking." *Id.* at 13:23-14:2. Consistent with that direction, Leaseholders reviewed their previously-served and unanswered discovery requests (Dkt.83-8; Dkt.83-9) and narrowed them to focus on immediate necessity and pre-filing negotiations, the issues identified by the court. Dkt.121-4; Dkt.94 at 19:16-23:20 (Am.Ex.3). That Leaseholders complied with the court's direction to propose only limited discovery on the understanding the court was going to decide only immediate necessity and not "authority" cannot render the process fair.[3]

---

[3] The district court recently stated it did not deny Leaseholders discovery they sought on "issues relevant to immediate possession." Dkt.122 at 3. But Leaseholders' contention is that the court restricted discovery on the *merits*, not immediate possession, because the court said it was deciding only the latter. Dkt.94 at 13:14-23:20.

9

### C. Leaseholders Will Suffer Irreparable Harm Absent A Stay

Amtrak's opposition almost entirely ignores Leaseholders' detailed arguments regarding irreparable harm. Leaseholders cited numerous cases recognizing irreparable harm in three categories: (1) damage to Leaseholders' business relationships, reputation, and goodwill; (2) damage to an irreplaceable property interest; and (3) destruction of USI's sole business purpose. Mot.18-21. Amtrak says (without citation) that these harms can be remedied by money damages. But it does not discuss any of the cases holding otherwise. *Id.*

Leaseholders backed up these legal arguments with factual support: a declaration from Lender's managing agent. Rebibo Decl. Amtrak largely ignores that declaration too, contending in a footnote it should be given little weight because it was not subject to cross-examination. Opp.26 n.11. But parties frequently submit declarations in support of stay motions, and Amtrak has not argued that any facts contained in Mr. Rebibo's declaration are incorrect.[4]

---

[4] Amtrak disputes that it is ill-equipped to run Union Station, but Amtrak's CEO admitted that, despite originally testifying that Amtrak "own[s]" and "control[s]" "all of the stations" on the Northeast Corridor, Amtrak does not run New York's Moynihan or Boston's South Stations. 9/11/23 Tr. 67:23-69:3 (Mot.Ex.8); *see* Dkt.99 ¶¶60-62. And while Amtrak says it merely wants to negotiate event contracts itself, Opp.28, that does not address Amtrak's plans to turn the East and Main Halls into passenger waiting halls—a move that USRC has neither approved nor consented to, Rebibo Decl. ¶8.

10

Rather than engage on the law or facts, Amtrak repeats two related responses: Leaseholders should have asked Amtrak to tie its hands in the transfer order, and Amtrak will tie its own hands via its opposition. But it would have been counterintuitive for Leaseholders to insist on an order for immediate possession that required Amtrak to refrain from doing exactly what it told the district court it needed immediate possession to do. Tellingly, Amtrak never offered to refrain from exercising these powers in any binding order. And Amtrak's belated promises in its stay briefing are not sufficient to protect Leaseholders from irreparable harm.

### D. The Balance Of The Equities And Public Interest Favor A Stay

Amtrak's opposition confirms it will not be harmed by a stay. After all of its concessions, Amtrak is left with just a handful of actions it would take if granted immediate possession, such as "improv[ing] signage, passenger congestion, [and] ticketing." Opp.30. But the impact of any delay in implementing those minor actions pales in comparison to the irreparable harm Leaseholders will face absent a stay. And there is no evidence that Amtrak would suffer a delay on those actions either; Amtrak has never tried to implement them under the current lease structure, despite Leaseholders working with Amtrak to implement other requested improvements. Rebibo Decl. ¶¶24, 29.

The public interest favors continued control by Leaseholders during the appeal. Mot.22-23. Amtrak dismisses Congress's concerns as isolated "letters from

11

selected members," Opp.31, but there is more to it.  Congress directed the Secretary of Transportation to provide a report on his plans to maintain the structure established by USRA.  Mot.22.  That pending inquiry further counsels in favor of leaving the status quo in place.

12

# CONCLUSION

This Court should enter a stay pending appeal.

Dated: July 10, 2024

/s/ *Steven J. Willner*
Steven J. Willner
NEUBERGER, QUINN, GIELEN, RUBIN
  & GIBBER
One South Street
27th Floor
Baltimore, MD 21202-3282
(410) 332-8542
sjw@nqgrg.com

*Counsel for Appellant
Union Station Investco, LLC*

Respectfully submitted,

/s/ *Melissa Arbus Sherry*
Melissa Arbus Sherry
Christine C. Smith
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
melissa.sherry@lw.com

Paul Kiernan
HOLLAND & KNIGHT LLP
800 17th Street, NW
Suite 1100
Washington, DC 20006
(202) 663-7276

Y. David Scharf
Amber R. Will
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
(212) 735-8604

*Counsel for Appellant
Kookmin Bank Co., Ltd.,
Individually and in its capacity as
Trustee of KTB CRE Debt Fund
No. 8, a Korean Investment Trust*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,599 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  July 10, 2024                    */s/ Melissa Arbus Sherry*
                                         Melissa Arbus Sherry

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Melissa Arbus Sherry*
Melissa Arbus Sherry