No. 24-7089

# United States Court of Appeals
# For the District of Columbia Circuit

NATIONAL RAILROAD PASSENGER CORPORATION, (AMTRAK),
*Plaintiff-Appellee*
v.
SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST MADE AS OF JANUARY 25, 2007, WITH SAID PROPERTY INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION, ET AL.,
*Defendants-Appellees*

UNION STATION INVESTCO, LLC AND KOOKMIN BANK CO., LTD., INDIVIDUALLY AND IN ITS CAPACITY AS TRUSTEE OF KTB CRE DEBT FUND NO. 8, A KOREAN INVESTMENT TRUST,
*Defendants-Appellants*

On Appeal from the U.S. District Court for the District of Columbia
No. 1:22-cv-01043, Hon. Amit P. Mehta

**PLAINTIFF-APPELLEE AMTRAK'S REPLY IN SUPPORT OF MOTION TO DISMISS APPEAL**

Patricia McHugh Lambert
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD 21204
Telephone: (410) 938-8800
plambert@pklaw.com

Lindsay C. Harrison
Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
lharrison@jenner.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.     The Order Is Not Appealable Under 28 U.S.C. §1291 ..................................... 2

    A.     Appellants Provide No Basis for Deviating from *Catlin*'s Final Judgment Rule. ............................................................................... 2

    B.     The *WMATA* Exception Does Not Apply. ............................................ 5

II.     The Order Is Not Appealable Under 28 U.S.C. §1292(a)(1). ......................... 8

    A.     The Order Does Not "Affect Predominantly All of the Merits." ............................................................................................. 9

    B.     The Order Does Not Have Consequences that Can Be Effectually Challenged Only by Immediate Appeal. ......................... 10

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES[*]

**CASES**

*Al Qahtani v. Trump*, 2020 WL 13657322 (D.C. Cir. Sept. 29, 2020) (per curiam) ..................................................................................... 10

*Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of United States Senate*, 471 F.3d 1341 (D.C. Cir. 2006) .................................. 3

*Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024) ........ 3

*\*Catlin v. United States*, 324 U.S. 229 (1945) ........................................ 1, 2, 5

*In re Domestic Airline Travel Antitrust Litigation*, 3 F.4th 457 (D.C. Cir. 2021) ............................................................................................ 9

*Loughran v. United States*, 317 F.2d 896 (D.C. Cir. 1963) .......................... 6

*Petties v. District of Columbia*, 227 F.3d 469 (D.C. Cir. 2000) ................... 5

*Pigford v. Veneman*, 369 F.3d 545 (D.C. Cir. 2004) .................................... 5

*\*Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258 (D.C. Cir. 2012) ..................................................................................... 9, 10

*United States v. Certain Land in the Borough of Manhattan*, 332 F.2d 679 (2d Cir. 1964) ............................................................................. 6

*United States v. Muniz*, 540 F.3d 310 (5th Cir. 2008) ............................. 7, 8

*United States v. Philip Morris USA, Inc.*, 840 F.3d 844 (D.C. Cir. 2016) .................................................................................................. 9, 10

*\*WMATA v. One Parcel of Land*, 514 F.2d 1350 (D.C. Cir. 1975) (per curiam) ............................................................................................. 5, 6

*WMATA v. Reliable Limousine Service, LLC*, 776 F.3d 1 (D.C. Cir. 2015) ...................................................................................................... 9

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

STATUTES

28 U.S.C. §1291 ...............................................................................................1, 2

28 U.S.C. §1292(a)(1).................................................................................1, 8, 10

49 U.S.C. §24311(b)(1) ..........................................................................................4

49 U.S.C. §24311(b)(2)(A).....................................................................................8

49 U.S.C. §24311(b)(3) ..........................................................................................2

# INTRODUCTION

The district court's Order Granting Amtrak's Motion for Immediate Possession (Ex.1)[1] is not a final judgment appealable under 28 U.S.C. §1291 nor an interlocutory order granting injunctive relief under 28 U.S.C. §1292(a)(1).

With respect to §1291, the Court should take the district court at its word that its "decision on immediate possession is not a final judgment." Dkt.123 at 10. Appellants do not fall within the narrow exception to the Supreme Court's general rule that appeals in condemnation proceedings are available only from final judgments "disposing of the whole case." *Catlin v. United States*, 324 U.S. 229, 233 (1945). This Court's exception was limited to instances where a court would be unable to assess the validity of the taking if it waited for final judgment. The district court's stay denial confirms that Appellants will have ample opportunity to continue challenging the "validity of [the] taking" here. Dkt. 123 at 10.

With respect to §1292(a)(1), Appellants have not justified how this basis for jurisdiction could apply to possession orders without eviscerating *Catlin*'s final judgment rule. In any event, the Order does not "affect predominantly all of the merits" and Appellants have not shown the requisite irreparable harm. The Court should grant Amtrak's motion to dismiss.

---

[1] "Ex." refers to Appellants' Exhibits; "Am.Ex." refers to Amtrak's Exhibits.

# ARGUMENT

## I. The Order Is Not Appealable Under 28 U.S.C. §1291.

### A. Appellants Provide No Basis for Deviating from *Catlin*'s Final Judgment Rule.

The Court lacks jurisdiction under 28 U.S.C. §1291 to consider this appeal. *Catlin* provides that appeal is not available until the district court has "dispos[ed] of the whole case, and adjudicat[ed] all rights, including ownership and just compensation, as well as the right to take the property." 324 U.S. at 233. A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id*.

Appellants do not seriously argue that they fall within *Catlin*'s general rule.[2] Nor could they: the district court's Order repeatedly made clear that it was not a final judgment, *see* Op.2, 29, 47, and its stay denial reiterated that the "grant of immediate possession is not a final judgment," Dkt. 123 at 16. Instead, Appellants seek to cabin *Catlin*'s scope in various respects.

First, Appellants suggest that final judgment is a "flexible" concept. Resp.2. But this Court has "construed the final judgment rule strictly, repeatedly noting that a district court's decision is ordinarily not final until it 'ends the litigation on the

---

[2] Appellants also do not contest that "judgment" is rendered only once the court has ruled on just compensation. *See* 49 U.S.C. §24311(b)(3).

2

merits and leaves nothing for the court to do but execute the judgment.'" *Banks v. Off. of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1345 (D.C. Cir. 2006) (citation omitted). Appellants' own case for the proposition that finality should be "'given a practical … construction'" itself recognizes that the "most important feature of final orders is that they 'end[] the litigation on the merits,'" and that the "'district court's intent is a significant factor' in determining whether the litigation before it is at an end.'" *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1059 (D.C. Cir. 2024) (citation omitted). Here, both considerations plainly support the conclusion that the Order is not final.

Second, Appellants argue that *Catlin* "does not set out a blanket prohibition on appeals before the determination of just compensation" because its rule applies only "'ordinarily.'" Resp.7-8 (quoting *Catlin*, 324 U.S. at 233). But this *is* an ordinary case. Unlike in the cases establishing an exception to *Catlin*, this Court will undoubtedly have jurisdiction after a final judgment, Amtrak will not be immune, and this case will not be moot. *See infra* at 6 (distinguishing cases); MTD at 12-14.

Finally, Appellants argue that *Catlin* is distinguishable because it involved a taking by the federal government. Resp.10-13. But *Catlin* sets forth the general rule, applicable across-the-board, that only orders that end the case are "final judgments" under § 1291. The fact that *Catlin* arose in the context of condemnation proceedings underscores its applicability here. And the district court has thoroughly explained

why the federal Declaration of Taking Act (DTA) and the Amtrak Statute are analogous. Op.28-30; *see also* MTD at 24-25.

Indeed, the DTA provides a far better analogy than the highly questionable line of cases Appellants invoke predicated on the transfer of "property" (in the form of enslaved persons) between private parties. *Cf.* Resp.11 (citing *Forgay v. Conrad*, 47 U.S. (6 How.) 201 (1848)). Like the DTA, the Amtrak Statute is structured to provide protection to property owners in the form of the full estimated value of just compensation deposited at the outset of a case, *see* 49 U.S.C. §24311(b)(1); nothing similar ensured a remedy for the slaveholders in *Forgay*. Given the $250 million already available to them, Dkt.123 at 18, Appellants cannot argue that Amtrak is not "able to respond in damages." Resp.10 (quotation marks omitted).

Nor can Appellants claim that Amtrak is not capable of being "a good steward of the property." Resp.10 (quotation marks omitted). The DTA and the Amtrak Statute create similar obligations to steward condemned properties, *see, e.g.*, Dkt.123 at 9-10; MTD at 24-25, and the only grounds for Appellants' contrary suggestion is the self-serving Rebibo Declaration which asserts that "harm" would come from placing the interests of rail passengers above those of a private developer. In other words, Amtrak and the government are aligned in their obligation to serve the public interest, in contrast to Appellants' "commercial and personal" aims. Dkt.123 at 19.

4

In any case, this Court has repeatedly cast doubt on the "continuing vitality" of *Forgay* beyond the collateral order doctrine, which Appellants have not invoked. *See Pigford v. Veneman*, 369 F.3d 545, 547 (D.C. Cir. 2004); *Petties v. District of Columbia*, 227 F.3d 469, 473 (D.C. Cir. 2000). And, as Appellants themselves concede (at 12), *Forgay* involved a situation where immediate appeal was necessary to avoid irreparable harm, which Appellants cannot show. *See* Dkt.123 at 17-19; MTD at 26-29. In sum, Chief Justice Taney's views on property rights cannot support an interlocutory appeal in this case.[3]

### B. The *WMATA* Exception Does Not Apply.

Appellants urge this Court to expand the exception to *Catlin* set forth in *WMATA v. One Parcel of Land*, 514 F.2d 1350 (D.C. Cir. 1975) (per curiam). That exception provides that an "order of possession is final and subject to review if it operates to defeat the right of the property owner to challenge the validity of the taking in the condemnation proceeding." *Id.* at 1351. It does not apply here.

---

[3] Appellants also argue that "*Catlin* expressly reserved the question of whether an appeal following a determination of just compensation is adequate when 'damage has been done to the premises'" by the unauthorized taking. Stay Reply 4 (quoting *Catlin*, 324 U.S. at 243); *see also* Resp.9 & n.4. But that question simply was not presented on *Catlin*'s facts. 324 U.S. at 243. Nor is it presented here: Appellants have provided no basis for concluding that "damage" will occur from Amtrak's taking possession, and Appellants cite no case in which a court relied on this language to depart from *Catlin*'s rule.

First, this Court has *never* applied the *WMATA* exception in the half century since it decided the case. And the cases *WMATA* relied on involved truly unusual situations in which an immediate appeal was necessary to ensure some opportunity to contest the validity of the taking. Contrary to Appellants' suggestion (at 4), Amtrak is not arguing that *WMATA* is limited only to temporary takings; rather, it is applicable to situations where—as Amtrak said previously—movants would "hav[e] no remedy if appeal were not advanced early." MTD at 13. Such situations occur where, for instance, the case would effectively be mooted before an appeal following final judgment (*WMATA*, 514 F.2d at 1351-52; *United States v. Certain Land in the Borough of Manhattan*, 332 F.2d 679, 680 (2d Cir. 1964)); or where property is to be transferred to an immune entity that could not later be sued (*Loughran v. United States*, 317 F.2d 896, 898 (D.C. Cir. 1963)). By contrast, this is an "ordinary" case and the "ordinary" *Catlin* rule applies.

Second, the exception does not apply even on its own terms. The Order did not "defeat the right of the property owner to challenge the validity of the taking in the condemnation proceeding." *WMATA*, 514 F.2d at 1351. The district court has said so directly, rejecting Appellants' contention that the court had "'decided the validity of Amtrak's taking under the Amtrak Statute.'" Dkt.123 at 10 ("Nothing could be further from the truth."). Instead, "final decision as to the legality of

Amtrak's taking will have to await more robust discovery." *Id.* This ongoing process plainly provides Appellants with a means to challenge the taking's validity.

Third, Appellants have not shown why an appeal in the ordinary course would not permit them to challenge the taking's validity. *Cf. United States v. Muniz*, 540 F.3d 310, 314 (5th Cir. 2008) (noting defendants "will have an adequate opportunity for appellate review, including an opportunity to challenge the propriety of the taking, after the district court renders final judgment").[4] Appellants argue that with possession, Amtrak would "immediately be able to make changes to the property interest itself, as well [as] to commercial tenants' subleases." Resp.3. But the mere fact that possession has changed hands is true for every possession order. If that is enough to trigger appealability, then *WMATA*'s narrow exception would swallow *Catlin*'s general rule.

Regardless, here the district court has credited Amtrak's representation that Amtrak "will not significantly modify the [S]ublease or terminate it." Dkt.123 at 17 (quoting Dkt.117 at 21).[5] The six-month clock to renegotiate the Sublease that

---

[4] Appellants take issue with Amtrak's reliance on *Muniz* because it, like *WMATA*, involved borings yet reached the opposite result on appealability. But the relevant question is whether there was an "adequate opportunity" to challenge the validity of the taking, and the Fifth Circuit found that there was. *Muniz*, 540 F.3d at 314.

[5] Appellants argue that the Court should not credit this statement because "jurisdiction should turn on what the [O]rder permits." Resp.4 n.2. But Appellants were free to negotiate for these terms in the Order and failed to do so. Appellants cannot now use their own failure to secure desired terms to manufacture appellate jurisdiction in this Court. Jurisdiction should not turn on Appellants' pure speculation that Amtrak will violate commitments made in its filings and "move forward with permanent changes." Resp.4 n.3.

7

Appellants reference starts only after "Amtrak's successful acquisition of the USI Sublease," which Amtrak has made clear refers to the time of final judgment. MTD at 15 (quoting JX3, at 23 (Ex.5)). And even if Amtrak did make changes to which Appellants object, that harm will be readily compensable after the fact if the Order is reversed. Appellants otherwise reiterate (at 5-6) their arguments regarding irreparable harm, but the district court already correctly rejected those arguments. Dkt.123 at 17-19.

## II. The Order Is Not Appealable Under 28 U.S.C. §1292(a)(1).

Nor is the Order immediately appealable under §1292(a)(1). Contrary to Appellants' suggestion, Amtrak does "meaningfully dispute that the district court's order has the practical effect of granting an injunction." Resp.14. Congress, not the court, awarded Amtrak title and quick-take rights; the Order simply sets "the time by which, and the terms under which, possession of the property is given to Amtrak." 49 U.S.C. §24311(b)(2)(A).

This is how all courts have interpreted §1292(a)(1) in condemnation cases, and for good reason. If appeals from possession orders could circumvent *Catlin* simply by invoking §1292(a)(1), there would be little purpose to *Catlin*'s final judgment rule: "any possession order would vest this court with immediate appellate jurisdiction in every eminent domain proceeding." *Muniz*, 540 F.3d at 314-15. Using §1292(a)(1) for this purpose would also upset this Court's settled jurisprudence

"constru[ing] section 1292(a) narrowly in order to avoid the 'debilitating' problems engendered by piecemeal appeals." *United States v. Philip Morris USA, Inc.*, 840 F.3d 844, 849 (D.C. Cir. 2016); *see also, e.g.*, *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012); *In re Domestic Airline Travel Antitrust Litig.*, 3 F.4th 457, 460 (D.C. Cir. 2021); *WMATA v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).

### A. The Order Does Not "Affect Predominantly All of the Merits."

Appellants argue for the first time that the Order has the "practical effect" of an injunction and is appealable because it "affect[s] predominantly all of the merits." *Salazar*, 671 F.3d at 1261-62 (quotation marks omitted).

The Order does not "affect predominantly all of the merits." The district court has not decided just compensation at all. And even as to possession, the court has only reached a preliminary conclusion subject to additional proceedings—as expressly confirmed in the court's stay denial. *See* Dkt.123 at 10; *cf.* Resp.16 (wrongly asserting that there are "no further proceedings scheduled on those merits determinations"). The district court has *not* yet "resolve[d]" the "merits of [the] case." Resp.15 (quoting *Ctr. for Nat'l Sec. Stud. v. CIA*, 711 F.2d 409, 413 (D.C. Cir. 1983)).

Appellants argue that this prong of *Salazar* nonetheless applies by overreading the word "affect[s]" to suggest that "even if, in future summary

9

judgment proceedings, the district court could theoretically change its mind," the Order still "affects" all the merits. Resp.16-17. But if every district court order containing tentative merits conclusions were said to "affect predominantly all of the merits," then piecemeal appeals would be the norm rather than the exception. *Salazar*, 671 F.3d at 1262 (quotation marks and alteration omitted). Moreover, in overreading the word "affect," Appellants read out the requirement that "all of" the merits of the case must be affected. As Appellants concede, the major merits issue of just compensation remains entirely unresolved. Resp.1.

In any event, even if the Order did have the "practical effect" of an injunction, this Circuit has suggested in cases that post-date *Salazar* that a "serious, perhaps irreparable consequence" that can be "effectually challenged only by immediate appeal" still must be shown to allow any appeal to move forward under §1292(a)(1). *See, e.g.*, *Philip Morris*, 840 F.3d at 849 (quotation marks omitted); *Al Qahtani v. Trump*, 2020 WL 13657322, at *1 (D.C. Cir. Sept. 29, 2020) (per curiam). As the district court correctly found, Appellants have not made that showing.

**B. The Order Does Not Have Consequences that Can Be Effectually Challenged Only by Immediate Appeal.**

Finally, Appellants argue (at 17-18) that the Order is appealable under §1292(a)(1) even if it does not "affect predominantly all of the merits" because (1) it "might have a serious, perhaps irreparable consequence" and (2) the Order can be "effectually challenged only by immediate appeal." *Salazar*, 671 F.3d at 1262

10

(quotation marks and alteration omitted). But these two considerations overlap with the *WMATA* inquiry into the need for immediate appeal and the stay inquiry into irreparable harm. Because Appellants have not satisfied either of those requirements, *see supra* at 5-8; Dkt.123 at 17-19; MTD at 26-29, the Court should reject this basis for jurisdiction as well.

## **CONCLUSION**

For these reasons, the appeal should be dismissed.

| | |
|---|---|
| Dated: July 19, 2024 | Respectfully submitted, |
| Patricia McHugh Lambert<br>PESSIN KATZ LAW, P.A.<br>901 Dulaney Valley Road, Suite 500<br>Towson, MD 21204<br>Telephone: (410) 938-8800<br>plambert@pklaw.com | /s/ *Lindsay C. Harrison*<br>Lindsay C. Harrison<br>Jessica Ring Amunson<br>JENNER & BLOCK LLP<br>1099 New York Ave. NW<br>Suite 900<br>Washington, DC 20001<br>Telephone: (202) 639-6000<br>lharrison@jenner.com |

*Counsel for Appellee National Railroad Passenger Corporation*

# CERTIFICATE OF COMPLIANCE

This Reply complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Reply contains 2,537 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).  This Reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Reply has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14 point Times New Roman font.

/s/ *Lindsay C. Harrison*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I caused to be electronically filed the foregoing Reply in Support of Plaintiff-Appellee National Railroad Passenger Corporation's Motion to Dismiss with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ <u>*Lindsay C. Harrison*</u>